IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HOUSTON CASUALTY COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. |
| UIH ASC DEVELOPMENT LLC, PEPPER CONSTRUCTION CO., TALON WALL HOLDINGS, LLC, ENTEKK GROUP, LTD., AND CHICAGO HEIGHTS GLASS, INC., | ) ) ) ) |
| | ) |
| Defendants. | ) |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, Houston Casualty Company ("HCC"), by and through its undersigned counsel, for its Complaint for Declaratory Judgment against UIH ASC Development LLC ("UIH"), Pepper Construction Co. ("Pepper"), Talon Wall Holdings, LLC ("Talon Wall"), Entekk Group, Ltd. ("Entekk"), and Chicago Heights Glass, Inc. ("CHG") (collectively, the "Defendants"), alleges as follows:

## NATURE OF THE CASE

1. This is an action for declaratory judgment and other relief, brought pursuant to 28 U.S.C. §§ 2201 and 2202, for the purpose of resolving an actual controversy between the parties regarding the rights and obligations arising under a Commercial General Liability "Wrap-Up" Policy that HCC issued to UIH, under which Pepper purports to be an additional Named Insured. In particular, HCC seeks a declaration that it owes no defense or indemnity obligation under the subject insurance policy with respect to Pepper's alleged liability in an underlying civil lawsuit pending in the U.S. District Court for the Northern District of Illinois, styled *Talon Wall*

*Holdings, LLC, et al. v. Reflection Window & Wall, LLC, et al.*, Case No. 1:21-cv-06618-CPK-MV (the "Underlying Lawsuit").

## THE PARTIES AND CITIZENSHIP

2. HCC is a corporation organized and existing under the laws of the State of Texas, with its principal place of business in Houston, Texas. HCC is authorized to transact the business of insurance within the State of Illinois.

3. Upon information and belief, Pepper is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business and corporate headquarters in Chicago, Illinois.

4. Upon information and belief, UIH is a limited liability company organized and existing under the laws of the State of Illinois, with its principal place of business in Glenview, Illinois.

5. Upon information and belief, UIH's managing and sole member is UIH ASC Manager LLC, which is a limited liability company organized and existing under Illinois law.

6. Upon information and belief, UIH ASC Manager LLC's managing and sole member is Brian C. Baker, a citizen of Illinois.

7. Upon information and belief, Talon Wall is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business in South Holland, Illinois. Talon Wall is a necessary party to this action under applicable Illinois law, and is joined as a defendant to ensure that Talon Wall is bound by any judgment rendered herein.

8. Upon information and belief, Talon Wall's sole managing member is Kurtis E. Levan, a citizen of Illinois.

9. Upon information and belief, Entekk is a corporation organized and existing under the laws of the State of Illinois, with its principal place of business in South Holland,

Illinois. Entekk is a necessary party to this action under applicable Illinois law, and is joined as a defendant to ensure that Entekk is bound by any judgment rendered herein.

10. Upon information and belief, Chicago Heights Glass is a corporation organized and existing under the laws of the State of Illinois, with its principal place of business in South Holland, Illinois. Chicago Heights Glass is a necessary party to this action under applicable Illinois law, and is joined as a defendant to ensure that Chicago Heights Glass is bound any the judgment rendered herein.

## JURISDICTION AND VENUE

11. This Court has jurisdiction over this action, pursuant to 28 U.S.C. §§ 2201 and 2202, insofar as HCC seeks a declaration of its rights and duties under the insurance policies at issue. Jurisdiction is also conferred by 28 U.S.C. § 1332(a) because complete diversity exists between the parties and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

12. Venue is proper in this judicial district, pursuant to 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to this claim occurred within this District and the Underlying Lawsuit is pending in this District Court. In addition, Defendants have sufficient minimum contacts with this District to confer personal jurisdiction over them in this Court.

## THE UNDERLYING LAWSUIT

13. On or about December 13, 2021, Talon Wall, Entekk, and CHG (collectively, the "Underlying Plaintiffs") filed the Underlying Lawsuit. (A true and correct copy of the Complaint is attached hereto as Exhibit 1.)

14. The Complaint names Pepper as a defendant, in addition to Reflection Window & Wall, LLC ("RWW"), Joel J. Phelps, Provident Group UIC Surgery Center, LLC ("Provident"),

LendLease (US) Construction Inc. ("LendLease"), 1400 Land Holdings, LLC ("1400 LH"), and John Does 1-50 (collectively, the "Defendants").

15. According to the Complaint, Talon Wall is in the business of manufacturing and installing façades and related components for high-rise buildings, either directly or through others, under the Talon Wall® mark (the "Talon Wall System").

16. The Underlying Plaintiffs allege that the Talon Wall System is an industry-altering, engineered, unitized, and factory glazed, curtain wall system, which greatly reduces the labor, material, and installation charges for curtain wall systems on high-rise buildings.

17. As a result of a number of factors, the Underlying Plaintiffs claim to have a significant competitive advantage over their industry peers as the Talon Wall System has become the preferred standard for many high-rise construction projects.

18. Talon Wall has allegedly protected its intellectual property through U.S. Patent Nos. 9,752,319 (the "'319 Patent"), 10,094,111 (the "'111 Patent"), 10,202,764 (the "'764 Patent"), 10,233,638 (the "'638 Patent"), and 10,724,234 (the "'234 Patent").

19. The Underlying Plaintiffs assert that the Defendants have infringed at least the '319, '764, and the '638 Patents (collectively, the "Patents in Suit").

20. Entekk and CHG claim to be the exclusive licensees of the Patents in Suit.

21. It is alleged that Phelps was formerly the Vice President of Business Development for CHG and had substantial knowledge regarding the technical details, advantages, and market opportunities for the Talon Wall System.

22. The Underlying Plaintiffs allege that, in June 2020, Phelps abruptly provided notice to CHG that he was terminating his employment and made it clear that he intended to work for one of Talon Wall's competitors.

23. Phelps was allegedly hired by RWW, a direct competitor of Talon Wall, soon after his separation from CHG.

24. Despite his contractual obligation to return certain materials to CHG pursuant to his Separation Agreement, Phelps allegedly failed to do so.

25. The Underlying Plaintiffs assert that Phelps' unique knowledge of Talon Wall's most confidential information—in particular, the effectiveness of the Talon Wall System and certain non-public Trade Secret improvements to the Talon Wall System—was one of the primary reasons that he was hired by RWW.

26. Phelps allegedly contacted the inventor, LeVan, to try and secure a license for RWW to use the Talon Wall technology, which was denied.

27. The Underlying Plaintiffs further allege that RWW, Phelps, Provident, Pepper, LendLease, and 1400 LH were aware that: (1) the Talon Wall System was subject to patents owned by Talon Wall; (2) Talon Wall had the right to make, install, use, and sell the Talon Wall System; and (3) neither RWW nor Phelps were "permitted to practice" or were licensed to use the Patents in Suit.

28. Similarly, the Underlying Plaintiffs contend that Talon Wall informed multiple defendants of the existence of the Patents in Suit.

29. The Underlying Plaintiffs claim that with full awareness that the Talon Wall System was a patented and superior product to anything being offered by RWW, Phelps—individually and in his capacity as an executive officer of RWW—created knockoff systems called U800 or UWALL (the "RWW System"), which infringes, and was known to infringe, the Patents in Suit.

30. The Underlying Plaintiffs contend that RWW advertises the RWW System on its webpage where it acknowledges that it is based on the Talon Wall System and admits that it used

UWALL for the UIH Medical Center at 1009 South Wood Street in Chicago (the "Pasquinelli Center") and the 1400 South Wabash Tower in Chicago (the "Wabash Tower).

31. Pepper is a general contractor of high-rise buildings that has allegedly used Plaintiffs and RWW as subcontractors for various projects.

32. According to the Complaint, Pepper was the general contractor for the UIH Medical Center and RWW was the façade subcontractor.

33. The Underlying Plaintiffs allege that at the behest of Phelps, and pursuant to an agreement between Pepper and RWW, the RWW System was made, used, and sold by them and Provident at the Pasquinelli Center.

34. Lendlease is a general contractor of high-rise buildings that has allegedly used Talon Wall and/or its affiliated companies and RWW as subcontractors for various projects.

35. According to the Complaint, LendLease is the general contractor for the Wabash Tower and RWW is the façade contractor.

36. The Underlying Plaintiffs allege that at Phelps' behest, and pursuant to an agreement between LendLease and RWW, the RWW System is being made, used, and sold by them and 1400 LH.

37. The Underlying Plaintiffs assert that the RWW System has been offered for use and/or formally accepted for several projects, and the making, using, and selling of the RWW Systems infringes on one or more of the '319, '764, and '638 Patents in Suit.

38. The Underlying Plaintiffs contend that the unauthorized use of the Patents in Suit has been intentional and willful, as shown by Phelps' knowledge of the Talon Wall System while employed by Entekk and his creation of the knockoff RWW System on behalf of the RWW, and because Talon Wall informed LendLease and 1400 LH of the Patents in Suit.

6

39. The Underlying Plaintiffs' claims are set forth in the following three causes of action: (Count I) Patent Infringement – U.S. Patent No. 9,752,319; (Count II) Patent Infringement – U.S. Patent No. 10,202,764; and (Count IV [sic]) Patent Infringement – U.S. Patent No. 10,233,638.

40. By way of relief, the Underlying Plaintiffs seek: (1) a judgment that the Defendants have directly infringed the Patents in Suit; (2) a preliminary and permanent injunction enjoining and restraining the Defendants, their officers, directors, agents, employees, attorneys, and all others acting under or through them, directly or indirectly, from infringing the Patents in Suit; (3) damages under 35 U.S.C. § 284, including treble damages for willful infringement with interest, costs (including all disbursements), and attorneys' fees as provided by 35 U.S.C. § 285 plus interest; and (4) such other and further relief as the court may deem just and proper.

## HCC'S PRELIMINARY CLAIMS HANDLING

41. On or about December 28, 2021, HCC received notice of the Underlying Lawsuit.

42. On or about January 31, 2022, HCC, through its authorized claims administrator, HCC Casualty Insurance Services, Inc., sent a letter to Pepper disclaiming coverage for the Underlying Lawsuit.

43. An actual, present, and justiciable controversy has arisen and now exists between HCC, UIH, and Pepper regarding their respective rights, duties, and obligations under the subject HCC policy, including whether HCC has any defense or indemnity obligations thereunder based on the facts alleged in the Underlying Lawsuit.

**THE HCC POLICY**

44. HCC issued "Wrap-Up" policy number H20PC31232-00 to UIH for the policy period August 24, 2020 to October 24, 2022 (the "HCC Policy"). (A true and correct copy of the HCC Policy is attached hereto as Exhibit 2.)

45. The HCC Policy provides Commercial General Liability insurance under ISO Form CG 00 01 12 07, and contains annual liability limits of $2 million each "occurrence,"[1] $4 million general aggregate, and $1 million "personal and advertising injury," subject to a $25,000 deductible each "occurrence," which reduces the stated limits.

46. The Insuring Agreement of Coverage A (Bodily Injury and Property Damage Liability) of the HCC Policy, as modified by the Wrap-Up Program Change Endorsement, provides the following, in relevant part:

> **SECTION I – COVERAGES**
>
> **COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
> **1. Insuring Agreement**
>
> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. …
>
> \*   \*   \*
>
> b. This insurance applies to "bodily injury" and "property damage" only if:
>
> (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place at the "Designated Project Site";

---

[1] Terms in quotation marks are defined in the HCC Policy.

(2) The "bodily injury" or "property damage" occurs during the policy period, except for "bodily injury" or "property damage" included in the "products-completed operations hazard". For "bodily injury" or "property damage" included in the "products-completed operations hazard" the "bodily injury" or "property damage" occurs during the policy period or within the "extended products-completed operations period"; and

(3) Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

47. The HCC Policy, as amended by endorsement, defines "bodily injury" to include:

bodily injury, sickness, disease, death, disability, and emotional distress (including therein mental anguish, mental injury, shock and humiliation) sustained by a person, including death resulting from any of these at any time.

48. The HCC Policy defines the term "property damage" as:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

49. The HCC Policy defines the term "occurrence" as:

an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

50. The Insuring Agreement of Coverage B (Personal and Advertising Injury Liability) of the HCC Policy, as modified by the Wrap-Up Program Change Endorsement, provides the following in relevant part:

9

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

1. **Insuring Agreement**

    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. …

    \* \* \*

    b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was committed at the, or related to the business of, the "Designated Project Site" and takes place during the policy period.

51. As amended by endorsement, the HCC Policy defines the term "personal and advertising injury" as injury including consequential "bodily injury" arising out of one or more of the following offenses:

    a. False arrest, detention or imprisonment;
    b. Malicious prosecution;
    c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner landlord or lessor;
    d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or
    e. Oral or written publication of material that violates a person's right of privacy.

52. Exclusion i. (Infringement of Copyright, Patent, Trademark, Trade Secret, Trade Dress or Advertising Ideas), as modified by the Intellectual Property Endorsement, provides that the insurance under Coverage B expressly does not apply to "personal and advertising injury" arising out of:

    a. Infringement, disparagement, dilution, diminishment of or damage to:

10

    (1) Copyright, slogan or title;
    (2) Patent;
    (3) Trademark, service mark, collective mark, or certification mark, including but without limitation any word, name, symbol, device or any combination thereof used to identify or distinguish the origin of a good, product or service;
    (4) Trade secret;
    (5) Trade dress including, without limitation, any shape, color, design or appearance used to distinguish the origin of a good, product or service;
    (6) Advertising ideas, concepts, campaigns, or style of doing business; or
    (7) Any other intellectual property rights recognized or implied by law;

  **b.** False designation of the origin of a good, product or service.

53. The HCC Policy's Electronic Data Liability Endorsement modifies the Commercial General Liability Coverage Part as follows:

> The following paragraph is added to **Section III – Limits Of Insurance:**
>
> Subject to **5.** above, the Loss Of Electronic Data Limit shown in the Schedule above is the most we will pay under Coverage **A** for "property damage" because of all loss of "electronic data" arising out of any one "occurrence".
>
> \* \* \*
>
> The following definition is added to the **Definitions** section:
>
> "Electronic data" means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.
>
> \* \* \*
>
> For the purposes of the coverage provided by this endorsement, the definition of "property damage" in the **Definitions** section is replaced by the following:
>
> 17. "Property damage" means:
>
>     **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it;

    b.  Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it; or

    c.  Loss of, loss of use of, damage to, corruption of, inability to access, or inability to properly manipulate "electronic data", resulting from physical injury to tangible property. All such loss of "electronic data" shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, "electronic data" is not tangible property.

### COUNT I – DECLARATORY RELIEF
### (The Insurance Under Coverage A of the HCC Policy Does Not Apply)

54.    HCC restates and incorporates by reference each and every allegation set forth in the preceding paragraphs as though set forth in full herein.

55.    In the Underlying Lawsuit, the Underlying Plaintiffs do not seek damages against Pepper because of "bodily injury" or "property damage," as such terms are defined in the HCC Policy.

56.    To the contrary, all of the claims against Pepper arise from the alleged infringement of patents, which are intangible rights that are incapable of sustaining "bodily injury" or "property damage."

57.    Even if the Complaint filed in the Underlying Lawsuit can be construed as seeking damages against Pepper because of "bodily injury" and/or "property damage" (which HCC disputes), such "bodily injury" and/or "property damage" must be caused by an "occurrence" in order to trigger coverage.

58.    In the Underlying Lawsuit, Pepper is alleged to have intentionally and willfully used the Patents in Suit without authorization and with the knowledge that the RWW System was a knockoff of the Talon Wall System.

59. None of the damages for which Pepper is potentially liable in the Underlying Lawsuit were caused by an "occurrence," as defined in the HCC Policy.

60. The insurance under Coverage A of the HCC Policy does not apply on these bases.

## COUNT II – DECLARATORY RELIEF
### (The Insurance Under Coverage B of the HCC Policy Does Not Apply)

61. HCC restates and incorporates by reference each and every allegation set forth in the preceding paragraphs as though set forth in full herein.

62. In the Underlying Lawsuit, the Underlying Plaintiffs do not seek damages against Pepper because of "personal and advertising injury," as such term is defined in the HCC Policy.

63. Rather, the claims against Pepper arise from patent infringement, which is not listed among any of the enumerated offenses referenced within the HCC Policy's definition of "personal and advertising injury."

64. The insurance under Coverage B of the HCC Policy does not apply on this basis.

## COUNT III – DECLARATORY RELIEF
### (Exclusion i. Bars Coverage Under Coverage B)

65. HCC restates and incorporates by reference each and every allegation set forth in the preceding paragraphs as though set forth in full herein.

66. Exclusion i. (Infringement of Copyright, Patent, Trademark or Trade Secret), as modified by the HCC Policy's Intellectual Property Endorsement, provides that the insurance under Coverage B expressly does not apply, in relevant part, to "personal and advertising injury" arising out of infringement, disparagement, dilution, diminishment of or damage to patents or any other intellectual property rights recognized or implied by law.

67. All liability sought to be imposed against Pepper in the Underlying Lawsuit arises out of patent infringement.

68. To the extent the Complaint filed in the Underlying Lawsuit can be construed as seeking damages because of "personal and advertising injury" (which HCC disputes), Exclusion i. applies to bar coverage in its entirety under Coverage B.

## COUNT IV – DECLARATORY RELIEF
### (The Insurance Under the Electronic Data Liability Endorsement Does Not Apply)

69. HCC restates and incorporates by reference each and every allegation set forth in the preceding paragraphs as though set forth in full herein.

70. The HCC Policy's Electronic Data Liability Endorsement provides a sublimit under Coverage A for claims of "property damage" because of all loss of "electronic data" arising out of any one "occurrence."

71. In the Underlying Lawsuit, the Underlying Plaintiffs do not seek damages against Pepper because of "property damage," as such term is defined in the Electronic Data Liability Endorsement.

72. Likewise, the Underlying Plaintiffs do not allege a loss of "electronic data," as such term is defined in the Electronic Data Liability Endorsement.

73. The insurance under the Electronic Data Liability Endorsement does not apply on these bases.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Houston Casualty Company respectfully requests that this Court enter judgment in its favor, and against all Defendants, as follows:

(a) Declaring that HCC owes no duty to defend or indemnify Pepper or any other purported insured under the HCC Policy with respect to the Underlying Lawsuit;

(c) Awarding HCC its attorneys' fees, costs, and disbursements in prosecuting this action; and

(d) Granting HCC any other and further relief as this Court deems just and appropriate.

## **JURY DEMAND**

Plaintiff Houston Casualty Company hereby demands a trial by jury pursuant to Fed. R. Civ. P. 38(b).

Dated:  January 31, 2022                                              Respectfully submitted,


                                                                                  /s/ Jordon S. Steinway
                                                                                  Jordon S. Steinway
                                                                                  Katherine A. Martin
                                                                                  BATESCAREY LLP
                                                                                  191 North Wacker, Suite 2400
                                                                                  Chicago, Illinois 60606
                                                                                  Telephone:  (312) 762-3169
                                                                                  Email:  jsteinway@batescarey.com
                                                                                  Email:  kmartin@batescarey.com

                                                                                 *Counsel for Houston Casualty Company*

20254.2906755