# EXHIBIT 1

In the United States Court
For the Northern District of Illinois

| | | |
|---|---|---|
| Talon Wall Holdings, LLC, <br> Entekk Group Ltd., and <br> Chicago Heights Glass, Inc. <br>                 Plaintiff <br><br> **v.** <br><br> Reflection Window & Wall, LLC, <br> Joel J. Phelps, <br> Pepper Construction Co., <br> Provident Group UIC Surgery <br> Center, LLC, <br> LendLease (US) Holdings, LLC, <br> 1400 Land Holdings, LLC, and <br> John Does 1-50. <br>                 Defendants | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | Case No. <br><br> JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiffs, Talon Wall Holdings, LLC, Entekk Group Ltd., and Chicago Heights Glass, Inc. (collectively "Plaintiffs"), through counsel, for their complaint against Reflection Window & Wall, LLC, Joel Phelps, Pepper Construction Co., Provident Group UIC Surgery Center, LLC, LendLease (US) Construction Inc., 1400 Land Holdings, LLC and John Does 1-50 (collectively "Defendants"), hereby state and allege as follows:

### THE PARTIES

1.  Talon Wall Holdings, LLC ("Talon Wall") is a limited liability company organized and existing under the laws of the State of Delaware and has a principal place of business at 16500 Vincennes Rd., S. Holland, Illinois 60473.

2.  Entekk Group Ltd. ("Entekk") is a corporation organized and existing under the laws of the State of Illinois and has a principal place of business at 16500 Vincennes Rd., S. Holland, Illinois 60473.

1

3. Chicago Heights Glass, Inc. ("CHG") is a corporation organized and existing under the laws of the State of Illinois and has a principal place of business at 16500 Vincennes Rd., S. Holland, Illinois 60473.

4. Reflection Window & Wall, LLC ("RWW") is a limited liability company organized and existing under the laws of the State of Illinois and has a principal place of business at 2525 N. Elston Ave., Suite D240, Chicago, IL 60647.

5. Joel J. Phelps ("Phelps"), upon information and belief, is an individual residing in Indiana and is an executive officer of and Director of Curtain Wall for RWW located at 2525 N. Elston Ave., Suite D240, Chicago, IL 60647.

6. Pepper Construction Co. ("Pepper") is a corporation organized and existing under the laws of the State of Delaware and has a principal place of business at 643 North Orleans Street, Chicago, IL 60654-3608.

7. Upon information and belief, Provident Group UIC Surgery Center, LLC ("Provident") is an Illinois LLC that is the lessor of the property located at 1009 S. Wood St., Chicago, IL 60612.

8. Lendlease (US) Construction Inc. ("LendLease) is a corporation organized and existing under the laws of the State of Florida and has principal places of business at 515 N Clark St, Chicago, IL 60654, 30 S Wacker Dr Ste 2400 Chicago, IL, 5800 S Stony Island Ave, Chicago, IL 60637.

9. 1400 Land Holdings, LLC ("1400 LH") is an LLC organized under the laws of the State of Delaware and has a principal place of business at 225 W. Ohio St., 6th FL, Chicago, IL 60654.

10. John Does 1-50 are entities with whom, upon information and belief, RWW has agreed to supply infringing products or that are practicing the infringing methods. When the identities of John Does 1-50 are identified, Plaintiffs intend to file an amended complaint naming those entities.

## JURISDICTION

11. This is a claim of patent infringement arising under the Acts of Congress relating to patents, namely, 35 U.S.C. §§ 271, 281-285.

12. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, and 1338(a).

13. This Court has personal jurisdiction over RWW because it is incorporated in the State of Illinois and resides within and has its headquarters in this judicial district.

14. This Court has personal jurisdiction over Phelps because of his systematic contacts with and purposeful availment of this forum. Specifically, and without limitation, Phelps is employed in the State of Illinois and has committed infringing acts within this judicial district.

15. This Court has personal jurisdiction over Pepper Construction Co., because it is resides within and its headquarters in this judicial district, and because it has committed acts of infringement in this judicial district.

16. This Court has personal jurisdiction over Lendlease (US) Construction Inc., because it has an office in this judicial district, and because it has committed acts of infringement in this judicial district.

17. This Court has personal jurisdiction over Provident because upon information and belief it has an office in this judicial district, and because it has committed acts of infringement in this judicial district.

18. This Court has personal jurisdiction over 1400 Land Holdings, LLC, because it has an office in this judicial district, and because it has committed acts of infringement in this judicial district.

19. Venue is proper in this judicial district pursuant to 28 U.S.C. § § 1391 and 1400(b) because Defendants reside within, have a physical place of business within, or undertook a substantial part of the events giving rise to this action in this judicial district.

**FACTUAL BACKGROUND**

20. Talon Wall is in the business of manufacturing and installing façades and related components for high-rise buildings, either directly or through others under the Talon Wall® mark (the "Talon Wall System").

21. The Talon Wall System is an industry-altering, engineered, unitized and factory glazed, curtain wall system. It accommodates complex geometry in all 3 axes, and is far less complex to fabricate and install than all other competitive systems, and requires less training and skill level than competing systems. It greatly reduces the labor, material and installation charges for curtain wall systems on high-rise buildings.

22. The Talon Wall System meets or exceeds project specifications with class leading thermal, structural, air, fire, acoustic and water performance. It does not require field applied acoustical, firesafing insulation, mullion wraps or

fire sealant at floor slab interfaces. It does not require layout or pre-setting of unit anchors at mounting locations to floor slabs.

23. The Talon Wall System provides low profile framing members in all conditions which leads to much higher daylight to occupants. It allows immediate completion of interior finishes at the floor below the active installation processes, and eliminates the need for temporary roofs, and water and mold damage to finishes below.

24. The Talon Wall System's robust designs accommodate wide modules and unsupported double spans with no additional internal steel reinforcing or kicker supports at mid-spans. It supports LEED goals by using an environmentally friendly, proprietary, reusable metal racking system for delivery to the construction site. This allows the complete unload, distribution, and specific placement of units to floors on a high rise building by two crew members in two hours or less.

25. The Talon Wall System also eliminates dumpster and cleanup charges for wood crates and packing material, as the racks may be returned for re-use.

26. The Talon Wall System also includes an option for a proprietary high performance 'zero sightline' concealed ADA/ANSI compliant operable window system for natural ventilation requirements. No floor slab notch-outs or grout fill are required for anchors. The Talon Wall System improves thermal performance by allowing designs that increase typical module sizes while reducing facade.

27. In addition, the Talon Wall System is significantly less complicated and less expensive to install.

28. As a result of the foregoing, Plaintiffs have a significant competitive advantage over their industry peers as the Talon Wall System has become the preferred standard for many high-rise construction projects, including these:



29. Talon Wall has protected its valuable intellectual property through U.S. Patent Nos. 9,752,319; 10,094,111; 10,202,764; 10,233,638; and 10,724,234.

30. Talon Wall is the owner by assignment of U.S. Patent No. 9,752,319 (the "'319 Patent") and has rights to enforce and collect damages and remedies for infringement of the '319 Patent. The '319 Patent was duly issued by the U.S. Patent and Trademark Office on September 5, 2017 to inventor LeVan and is in full force and effect.

31. Talon Wall is the owner by assignment of U.S. Patent No. 10,094,111 (the "'111 Patent") and has rights to enforce and collect damages and remedies for infringement of the '111 Patent. The '111 Patent was duly issued by the U.S. Patent and Trademark Office on October 9, 2018 to inventor LeVan and is in full force and effect.

32. Talon Wall is the owner by assignment of U.S. Patent No. 10,202,764 (the "'764 Patent") and has rights to enforce and collect damages and remedies for infringement of the '764 Patent. The '764 Patent was duly issued by the U.S. Patent and Trademark Office on February 12, 2019 to inventor LeVan and is in full force and effect.

33. Talon Wall is the owner by assignment of U.S. Patent No. 10,233,638 (the "'638 Patent") and has rights to enforce and collect damages and remedies for infringement of the '638 Patent. The '638 Patent was duly issued by the U.S. Patent and Trademark Office on March 19, 2019 to inventor LeVan and assignee Talon Wall and is in full force and effect.

34. Talon Wall is the owner by assignment of U.S. Patent No. 10,724,234 (the "'234 Patent"), and has rights to enforce and collect damages and remedies for infringement of the '234 Patent. The '234 Patent was duly issued by the U.S. Patent and Trademark Office on July 28, 2020 to inventor LeVan and assignee Talon Wall and is in full force and effect.

35. The Defendants have infringed at least the '319, '764 and the '638 Patents (collectively, the "Patents in Suit").

36. Entekk and CHG are exclusive licensees of the Patents in Suit.

37. Phelps was the VP of Business Development for CHG, and had substantial knowledge regarding the technical details, advantages and market opportunities for the Talon Wall System.

38. In June of 2020, Phelps, the VP of Business Development for CHG abruptly provided notice to CHG that he was terminating his employment, and made clear that intended to work for a competitor of Talon Wall.

39. Armed with the confidential information of Talon Wall, Phelps was promptly hired by RWW, a direct competitor of Talon Wall.

40. Phelps was obligated to return certain materials CHG by virtue of a Separation Agreement but failed to do so

41. Upon information and belief, Phelps' unique knowledge of the Talon Wall's most confidential information – in particular, the effectiveness of the Talon Wall and certain non-public Trade Secret improvements to the Talon Wall System – was one of the primary reasons that Phelps was hired by RWW.

42. As a tacit admission that the Talon Wall System was exceptional within the industry, Phelps contacted LeVan about a month after abruptly quitting, and tried to secure a license for RWW to use the Talon Wall technology. Talon Wall denied this request.

43. At all relevant times, RWW and Phelps, Provident, Pepper, LendLease and 1400 LH were aware (1) that the Talon Wall System was subject to patents owned by Talon Wall; (2) that Talon Wall had the right to make, install, use and sell the Talon Wall, and (3) that neither RWW nor Phelps were permitted to practice or were licensed the Patents in Suit.

44. Talon Wall informed multiple defendants of the existence of the Patents in Suit.

45. With full awareness that the Talon Wall System was a patented and superior product to anything being offered by RWW, Phelps both individually and in his capacity as an executive officer of RWW, along with RWW, created knock off systems called the U8000 or UWALL (collectively, the "RWW System")

which infringe the Patents in Suit and which was known to infringe the Patents in Suit.

46. RWW advertises the RWW System on its webpage https://reflectionwindow.com/product-type/curtain-wall/ as follows:



47. This webpage implicitly acknowledges that the RWW System is based on the Talon Wall System in stating that the UWall has "exceptional invention and parentage."

48. The webpage also admits that the UWall was used for the "UIH Medical Center, and the 1400 South Wabash Tower."

49. Pepper is a general contractor of high-rise buildings that has used both Plaintiffs and RWW as subcontractors for various projects.

50. Pepper was the general contractor for the UIH Medical Center at 1009 S. Wood St., Chicago, IL 60612 (the "Pasquinelli Center,") and RWW was the façade subcontractor.

9

51. At the behest of Phelps and pursuant to an agreement between Pepper and RWW, the RWW System was made, used and sold by them and Provident at the Pasquinelli Center, as evidenced by the following diagram and photos:



52. LendLease is a general contractor of high-rise buildings that has used both Talon Wall and/or its affiliated companies and RWW as subcontractors for various projects.

10

53. LendLease is the general contractor for the 1400 South Wabash Tower in Chicago, IL 60612 (the "Wabash Tower") and RWW is the façade subcontractor.

54. At the behest of Phelps and pursuant to an agreement between LendLease and RWW, the RWW System is being made, used and sold by them and 1400 LH as confirmed by the webpage at https://reflectionwindow.com/product-type/curtain-wall/.

55. Upon information and belief, the RWW System has been offered for use and/or formally accepted for other projects including projects at 95 Hawthorne, San Francisco, CA, 605 Davis, Evanston, IL 1200 W. Carroll, Chicago, IL, Lincoln Yards, Chicago, IL, and 1000 Michigan, Chicago, IL.

56. The making, using and selling of the RWW System infringes one or more claims of the, '319, '764, and '638 Patents.

57. Upon information and belief, the unauthorized use of Plaintiffs' patents has been intentional and willful, in part as shown by Phelps' knowledge of the Talon Wall System while employed by Entekk and his creation of the knock-off RWW System on behalf of the RWW, and because Talon Wall informed LendLease and 1400 LH of the Patents in Suit.

58. Plaintiffs have complied with the notice provision of the Patent Act, 35 U.S.C. § 287, including by listing the Patents in Suit on the Entekk website and on Talon Wall Systems when manufactured and delivered.

**COUNT I**

**PATENT INFRINGEMENT – U.S. PATENT NO. 9,752,319**

11

59. The preceding allegations are incorporated herein by reference.

60. RWW, Phelps, Pepper and John Does 1-50 have created, made, used, benefitted from the use of, sold, and offered for sale in the United States the RWW System that infringes at least one claim of the '319 Patent, and/or have induced infringement of the '319 Patent by Pepper, LendLease, 1400 LH and Provident though buildings they have constructed that use the RWW System.

61. RWW, Phelps, LendLease and 1400 LH were each informed that the RWW System and its use infringe the '319 Patent yet each did nothing to abate further infringement.

62. RWW, Phelps, Pepper and LendLease have contributed to the infringement of the '319 Patent by providing products and services that have no non-infringing use or purpose, and thereby causing Pepper, Provident, LendLease, and 1400 LH to directly infringe.

63. Plaintiffs have been damaged, and will continue to be damaged, by Defendants' infringement of the '319 Patent.

64. Plaintiffs have suffered, and will continue to suffer, irreparable harm, unless the Defendants are enjoined from infringing the '319 Patent.

## COUNT II

### PATENT INFRINGEMENT – U.S. PATENT 10,202,764

65. The preceding allegations are incorporated herein by reference.

66. RWW, Phelps, Pepper and John Does 1-50 have created, made, used, benefitted from the use of, sold, and offered for sale in the United States the RWW System that infringes at least one claim of the '764 Patent, and/or have

12

induced infringement of the '764 Patent by Pepper, LendLease, 1400 LH and Provident though buildings they have constructed that use the RWW System.

69. RWW, Phelps, LendLease and 1400 LH were each informed that the RWW System and its use infringe the '764 Patent yet each did nothing to abate further infringement.

68. RWW, Phelps, Pepper and LendLease have contributed to the infringement of the '764 Patent by providing products and services that have no non-infringing use or purpose, and thereby causing Pepper, Provident, LendLease, and 1400 LH to directly infringe.

69. Plaintiffs have been damaged, and will continue to be damaged, by Defendants' infringement of the '764 Patent.

70. Plaintiffs have suffered, and will continue to suffer, irreparable harm, unless the Defendants are enjoined from infringing the '764 Patent.

## COUNT IV

### PATENT INFRINGEMENT – U.S. PATENT 10,233,638

71. The preceding allegations are incorporated herein by reference.

72. RWW, Phelps, Pepper and John Does 1-50 have created, made, used, benefitted from the use of, sold, and offered for sale in the United States the RWW System that infringes at least one claim of the '638 Patent, and/or have induced infringement of the '638 Patent by Pepper, LendLease, 1400 LH and Provident through buildings they have constructed that use the RWW System.

13

73. RWW, Phelps, LendLease and 1400 LH were each informed that the RWW System and its use infringe the '638 Patent yet each did nothing to abate further infringement.

74. RWW, Phelps, Pepper and LendLease have contributed to the infringement of the '638 Patent by providing products and services that have no non-infringing use or purpose, and thereby causing Pepper, Provident, LendLease, and 1400 LH to directly infringe.

75. Plaintiffs have been damaged, and will continue to be damaged, by Defendants' infringement of the '638 Patent.

76. Plaintiffs have suffered, and will continue to suffer, irreparable harm, unless the Defendants are enjoined from infringing the '638 Patent.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs prays for the following relief:

A. A judgment that Defendants have directly infringed U.S. Patent Nos. 9,752,319, 10,202,764 and 10,233,638;

B. A preliminary and permanent injunction enjoining and restraining Defendants, their officers, directors, agents, employees, attorneys and all other acting under or through them, directly or indirectly, from infringing U.S. Patent Nos. 9,752,319, 10,202,764 and 10,233,638;

C. A judgment and order directing Defendants to pay damages to Plaintiffs under 35 U.S.C. § 284, including treble damages for willful infringement, with interest; and

D.  A judgment and order directing Defendants to pay the costs of this action (including all disbursements) and attorneys' fees as provided by 35 U.S.C. § 285, with interest; and

E.  Such other and further relief as this Court may deem just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury, pursuant to Rule 38 of the Federal Rules of Procedure, as to all issues triable by jury.

**Overhauser Law Offices LLC**

By: s/Paul B. Overhauser
Paul B. Overhauser
18 E. Main St., Suite 202
Greenfield, IN 46140
P: 317-467-9100
poverhauser@overhauser.com
*Attorneys for Plaintiffs*